(No. 3199— )

JESSE G. FIVASH, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed November 14, 1939.*

WHEATLEY & COMBE, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant herein was employed by the Division of Highways, Department of Public Works and Buildings, State of Illinois. On December 8, 1936 while engaged as a rodman in a party of engineers on State Aid Route No. 20 in Williamson County, Illinois, he slipped on some icy ground and fell on his right hip causing an intertrochanteric fracture of the right femur. There was some delay in procuring an ambulance but as soon as possible he was taken to the Herrin Hospital where first-aid, medical and surgical attention was furnished to him by the State and he was there placed under the care of Dr. W. R. Gardiner of Herrin, Illinois, at the request of the Highway Department. Dr. Gardiner took an X-ray picture of the injured pelvis which disclosed the fracture, with some displacement of the ends of the femur. The fractures were reduced and weights attached to the limb, and after about two weeks a cast was applied to the limb, but this had to be removed because the claimant developed pneumonia. The patient remained in the hospital until February, 1937, and was then removed to his home at Marion, Illinois, where he continued under the treatment of Dr. Alonzo N. Baker, of that city. His condition became worse and on February 18, 1937 the State Highway Department caused him to be removed to St. Andrews Hospital at Murphysboro where he was placed under the care of Dr. R. S. Sabine who discovered that the patient's right foot was beginning to drop and to pull inward. On March 2, 1937 he was returned to his home at Marion under the care of Dr. Baker. During all of this period he had continued to run temperature and could not move except by the use of two crutches. On May 1, 1937, under instructions from the State Highway Department at Carbondale, claimant returned to work and a "make-shift job" was provided for him. He was supposed to draw gasoline and make out tickets at the Carbondale Highway Office, but was unable to do any substantial work because it was necessary for him to use his crutches at all times and apparently the only work he did during that month was a few clerical duties. On May 29, 1937 Dr. Baker found that gangrene had developed on the right foot. The latter was red and discolored. The patient was taken to St. Luke's Hospital in Chicago on orders from Mr. Lingle of the Highway Office, and was there placed under the care of Dr. Thomas.

Applications were given and the foot treated to reduce the swelling, and according to Mr. Fivash's testimony the development of the gangrenous condition was stopped. On June 9, 1937 he was sent to the Y. M. C. A. Hotel in Chicago by the State, but was unable to carry out the medical instructions because of lack of facilities and being unable to wait on himself. Mr. Pelzman from the Research Laboratory called on him each day and treated him with light rays and massage, and patient called at the Research Hospital twice to see Dr. Thomas. Claimant returned to his home July 23, 1937 under the care of Dr. Baker who also prescribed massage of the injured limb. On August 11, 1937 claimant was again taken to Chicago by the Highway Department, where he stayed in the Y. M. C. A. Hotel under the care of Mr. Pelzman who resumed his former treatments under the direction of Dr. Thomas. The latter ordered a brace applied to the lower part of the injured limb in an effort to prevent the foot-drop. Patient again returned home August 31, 1937; went back to Chicago in September to St. Luke's Hospital under the care of Dr. Thomas where he received physiotherapy treatment. He returned home November 1, 1937 and was sent back to the Y. M. C. A. in Chicago from December 8th to December 21st, 1937, and received treatments similar to those previously given.

At the hearing claimant testified that there was no improvement in his leg during his Chicago treatments; that he still had to use crutches; that his left arm was gradually becoming lame; and that his lungs were troubling him during all of this time. That when he complained of his lungs in Chicago he was told that he was being treated there for the injured leg and if he needed treatment for other conditions he would have to go elsewhere for same.

The record shows that on December 29, 1937 claimant was notified by M. K. Lingle that Dr. Thomas wanted him to return to complete the treatments for his leg, and that transportation and board and lodging at the Y. M. C. A. in Chicago had been arranged for. On January 3, 1938 Mr. Fivash notified Mr. Lingle as follows:

"It will be impossible for me to return to Chicago today for further treatment, as per your request, due to the fact that to date I have failed to see any material improvement in my foot and leg, and I am badly in need of other medical attention which has been denied me in Chicago, as Dr. Thomas has told me that all he was getting paid for was to treat my foot;

therefore, it will be necessary for me to remain at home to obtain this attention. Also due to the fact that my compensation has been cut down to such a small amount, it is impossible for me to stay in Chicago and provide anything for my family at home. Thanking you for all past favors, I am, Yours very Resp."

On January 7, 1938 Mr. Lingle notified Mr. Fivash that if he failed to avail himself of the further treatment offered by Dr. Thomas, such action would serve as a definite refusal of treatment and that the State might avail itself of the provisions of the Compensation Law of Illinois to suspend compensation when an employee refuses to submit to such medical, surgical or hospital treatment as offered by the employer.

Mr. Fivash made no reply and did not return to Chicago for any further care.

All expenses for ambulance service, medical, surgical, x-ray, railroad, street car, bus, hotels, nursing, and appliances from the date of the injury December 8, 1936 through December 31, 1939, so far as is known to the Highway Department have been paid by the State in a total amount of $1,501.63.

Since he discontinued the treatments in Chicago his limb has continued to have a drop-foot condition, and at a physical examination in open court before the members thereof in April, 1939, the right foot was found to be in a diseased, swollen, inflamed state, and drainage in the bottom of the foot that indicated a continuing gangrenous condition. There was some movement from the hip but in a highly reduced measure. Claimant could not use the foot but of necessity walked with a crutch, and he still wore a brace extending from below the knee and fastened underneath the ball of the foot for the purpose apparently of aiding in the correction of the drop-foot condition. The continued wearing of this brace with any binding effect therefrom doubtless tends to restrict circulation in the foot.

Extensive evidence appears in the record from the testimony of the various doctors and others regarding the injury suffered by Mr. Fivash and the later lameness of his left arm, and the resultant effects from the pneumonia which he had in the early period of his hospital treatment. Counsel for claimant contend that the combination of these conditions has resulted in his becoming permanently and totally disabled, and that he is entitled to compensation on such basis in

the sum of $4,450.00, less compensation paid, with an annual pension thereafter during his lifetime equal to eight (8) per cent of said sum of $4,450.00.

Respondent contends that claimant, having failed to return to Chicago in January, 1938 when requested so to do by the Highway Department, forfeited his right to an award, under the theory that his original fracture which resulted from the accident in question was fully healed, and that his present condition is entirely the result of his negligence and failure to continue with the treatments offered him at the hands of Dr. Thomas in Chicago.

Section 19(d) of the Workmen's Compensation Act provides as follows:

"If any employee shall persist in insanitary or injurious practices which tend to either imperil or retard his recovery or shall refuse to submit to such medical, surgical, or hospital treatment as is reasonably essential to promote his recovery, the commission may, in its discretion, reduce or suspend the compensation of any such injured employee."

Under the foregoing it is for the Industrial Commission, or in this instance the Court of Claims, in its discretion to reduce or suspend the compensation of any injured employee when it is brought to the attention of the court that such employee is persisting in injurious practice. In the present instance no application was ever made to the court in regard to claimant's failure to return to Chicago, and the record does not establish that his failure to return has imperiled his recovery, or that he did not receive adequate care after declining to return to Chicago.

We do not desire to attempt to recapitulate all the evidence of the various witnesses, but the court has carefully studied the testimony of all such witnesses and has had the benefit of personally viewing claimant's condition.

Our conclusion is:

That claimant is entitled to an award under the Workmen's Compensation Act for temporary total disability for a period of sixty-four (64) weeks, and for specific loss of use of the right leg. Dr. J. B. Moore, of Benton, Illinois, a witness called by claimant, was unable to explain the apparent involvement of the left arm.

Dr. E. H. Deppe, of St. Louis, Missouri, called by claimant, testified that the latter had an almost complete paralysis of the right foot and toes.

Dr. Zach Hudson, of Marion, Illinois, claimant's family physician, testified that he thought the complaint in the left arm was due to crutch pressure; that he made a test for tuberculosis and found no tuberculi germs.

Dr. R. N. Baker testified to a complete paralysis of claimant's right leg from the knee down but found nothing seriously wrong with his left arm.

Dr. Charles W. Miller, of St. Louis, examined claimant on May 21, 1938 and testified that he found no evidence of any pulmonary trouble, and that a complete physical examination and x-ray of the chest disclosed the latter to be normal.

As above indicated, we find that the evidence does not support an award for permanent total disability.

Claimant's annual earnings were $1,200.00 per year and his average weekly wage was $23.08. He had one child under sixteen (16) years of age at the time of the accident, and his compensation, based on fifty-five (55) per cent of his average weekly wage, should be computed at $12.69 per week. Claimant was paid compensation until January 22, 1938 and his temporary total incapacity should extend to the maximum period of sixty-four (64) weeks. We therefore find that claimant is entitled to an award as follows:

For temporary total disability at $12.69 per week for 64 weeks......$ 812.16
Specific loss of use of the right leg, 190 weeks at $12.69 per week.... 2,411.10

$3,223.26
Less compensation paid from Dec. 9, 1936 to Jan. 22, 1938.......... 715.32

Balance due for award................................................$2,507.94

Compensation has accrued from the date of the injury to November 3, 1939—147 weeks at $12.69 per week, or $1,865.43. Claimant has been paid the sum of $715.32 to apply on his compensation, leaving a balance of accrued compensation to November 3, 1939 of $1,150.11. Claimant is entitled to an award in the amount of $2,507.94 payable as follows, to-wit:

$1,150.11 forthwith and the balance in weekly installments of $12.69 per week. The first installment being due and payable on November 10, 1939. An award is hereby made in favor of Jesse G. Fivash in accordance with the foregoing, in the sum of $2,507.94 payable as hereinabove stated.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing For the

Method of Payment Thereof," approved July 3, 1937 (Session Laws 1937, page 83), and being subject further to the terms of an Act entitled "An Act Making Appropriations to the Auditor of Public Accounts for the Disbursement of Certain Monies Until the Expiration of the First Fiscal Quarter After the Adjournment of the Next Regular Session of the General Assembly" (S. B. 123 as amended), approved July 8, 1939;—and being, by the terms of the first mentioned Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the Road Fund in the manner provided for by the foregoing Acts.